UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| BEN F. BLANTON CONSTRUCTION, INC., ) | Case No. 20-43555-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| BEN F. BLANTON CONSTRUCTION, INC., ) | **Adversary No. 20-4056-659** |
| ) | |
| Plaintiff, ) | **PUBLISHED** |
| ) | |
| -v- ) | |
| ) | |
| TRAVELERS PROPERTY CASUALTY ) | |
| COMPANY OF AMERICA, *et al*. ) | |
| ) | |
| Defendants. ) | |

# O R D E R

The matters before the Court are Defendant's Motion for Partial Summary Judgment filed by Travelers Property Casualty Company of America (hereinafter "Travelers"); Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment filed by Travelers; Defendant's Statement of Uncontroverted Material Facts filed by Travelers; Plaintiff's Response to Defendant's Motion for Partial Summary Judgment and Memorandum; Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts; Defendant's Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment filed by Travelers; and Defendant's Response to Plaintiff's Statement of Additional Facts filed by Travelers. Upon consideration of the record, the Court makes the following **FINDINGS OF FACT**:

## I. BACKGROUND

Ben F. Blanton Construction, Inc., (hereinafter "Blanton") served as the general contractor on The Vue Project also known as the Old Olive Project, located at 10545 Old Olive Road, Creve Coeur, Missouri (hereinafter "Project"). Defendant's Statement of Uncontroverted Material Facts

(hereinafter "SUMF") ¶ 1.  The owner of the Project is BCC Partners.  SUMF ¶ 2.  Blanton and BCC Partners entered into a contract where Blanton served as the Project's general contractor for a total agreed upon price of $24,461,157.50.  SUMF ¶ 3.

## II. TRAVELERS POLICY

Travelers issued Blanton a Builder's Risk Policy of Insurance with effective dates of June 26, 2015 to September 30, 2016 (hereinafter "Travelers Policy").  SUMF ¶ 4.  The Travelers Policy identified a Total Project Value and Covered Property Limit of Insurance at $24,461,157.00.  SUMF ¶ 5.  The Travelers Policy identified the Project location of 10545 Old Olive Road, Creve Coeur, Missouri and described the Covered Property as follows:

> NEW CONSTRUCTION OF 7 APARTMENT BUILDINGS. BUILDING 1 IS 4 STORIES WITH APPROX 161,524 SF. BUILDING 2 IS 4 STORIES WITH APPROX 52,539 SQ FEET. BUILDINGS 3-7 ARE 2 STORIES WITH 3534 SQ FEET AND GARAGE ON BOTTOM OF APARTMENT.

SUMF ¶ 6.

On December 28, 2015, the Original MSE Wall at the Project (hereinafter "Original MSE Wall") suffered a loss.  SUMF ¶ 8.  Blanton thereafter made a claim for coverage under the Travelers Policy totaling $3,928,647.79.  SUMF ¶ 8 and ¶ 9.  Blanton alleges that Travelers failed to pay the claim in full.  On April 17, 2017, Blanton filed a Petition against Travelers and others in St. Louis County Circuit Court (hereinafter "State Court").

## III. STATE COURT MATTER

On September 19, 2019, Travelers filed Defendant's Motion for Partial Summary Judgment (hereinafter "Travelers' State Court Motion for Partial Summary Judgment") and Defendant Travelers Property Casualty Company of America's Memorandum in Support of its Motion for Partial Summary Judgment.  Defendant's Response to Plaintiff's Statement of Additional Facts (hereinafter "Resp. SUMF") ¶ 1.  On October 28, 2019, Blanton filed a response to Travelers' State

-2-

Court Motion for Partial Summary Judgment. Resp. SUMF ¶ 2.

On December 3, 2019, the State Court granted partial summary judgment in favor of Travelers, specifically finding that Blanton is not entitled to coverage under the Travelers Policy on Blanton's claim "for reimbursement of the costs associated with the removal and replacement of unsuitable soils beneath the foundation of the Original MSE Wall and/or hillside after the incident." (hereinafter "State Court Order"). SUMF ¶ 34. The State Court denied the remaining requests in Traveler's State Court Motion for Partial Summary Judgment. *See* Resp. SUMF ¶ 5; *see also* infra Conclusions of Law.

### IV. BANKRUPTCY MATTER

On July 16, 2020, Blanton filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. On August 10, 2020, Blanton filed Notice of Removal, removing the State Court Lawsuit to Bankruptcy Court. On December 14, 2021, Travelers filed Defendant's Motion for Partial Summary Judgment (hereinafter "Motion for Partial Summary Judgment") and Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment. On January 4, 2022, Blanton filed Plaintiff's Response to Defendant's Motion for Partial Summary Judgment and Memorandum (hereinafter "Response") and Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts. On January 11, 2022, Travelers filed Defendant's Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment (hereinafter "Reply") and Defendant's Response to Plaintiff's Statement of Additional Facts.

### V. REPLACEMENT WORK

On December 14, 2021, Travelers filed as exhibits to Defendant's Statement of Uncontroverted Material Facts Depositions of Jeff Blanton (hereinafter "Mr. Blanton"), President of Blanton Construction; James Hauk (hereinafter "Mr. Hauk") Principal of Wiss, Janey; Robert Lukas (hereinafter "Mr. Lukas"), Owner of GEC; Scott Rozier (hereinafter "Mr. Rozier"), Founder and CEO of Rosch Company; Nicholas Rothe (hereinafter "Mr. Rothe"), Vice-president of Budrovich

Development; Brian Schaller (hereinafter "Mr. Schaller"), Head Engineer of Rosch Engineering; and Kent Stone (hereinafter "Mr. Stone"), Property Adjuster of Travelers Insurance.

Mr. Blanton, Mr. Hauk, and Mr. Lukas stated that following the failure of the Original MSE Wall unsuitable soils that had previously not been disturbed or removed were discovered beneath the foundation of the Original MSE Wall and the hillside area behind it.  SUMF ¶ 10.  Mr. Hauk and Mr. Rozier stated that unsuitable soils existed on the Project prior to commencement of the Project.  SUMF ¶ 11.  Mr. Hauk and Mr. Rothe stated that unsuitable soils were not disturbed or removed during the construction of the Original MSE Wall or hillside.  SUMF ¶ 12.  Mr. Hauk stated that the foundation beneath the Replacement MSE Wall at the Project (hereinafter "Replacement MSE Wall") was dug much deeper and wider than the foundation beneath the Original MSE Wall.  SUMF ¶ 13.

Mr. Hauk and Mr. Lukas stated that following the failure of the Original MSE Wall, Blanton's engineers determined that unsuitable soils needed to be excavated to properly construct the Replacement MSE Wall.  SUMF ¶ 14.  Mr. Hauk and Mr. Lukas stated that unsuitable soils should have been discovered before the Original MSE Wall was constructed.  SUMF ¶ 15. Mr. Hauk and Mr. Lukas further stated that the failure to discover unsuitable soils before the Original MSE Wall was constructed constitutes faulty, inadequate, and defective planning, workmanship, and construction.  SUMF ¶ 16.

Mr. Blanton stated that Budrovich Excavating, Inc. (hereinafter "Budrovich") removed unsuitable soils prior to construction of the Replacement MSE Wall.  SUMF ¶ 17.  Mr. Blanton further stated that the removal and replacement of unsuitable soils beneath the Original MSE Wall and hillside foundation was not called for or included as part of the original contract or contract price between Blanton and BCC Partners.  SUMF ¶ 18.

Mr. Blanton, Mr. Rozier, and Mr. Rothe stated that during the construction of the Replacement MSE Wall a concrete keyway was installed.  SUMF ¶ 19.  Mr. Blanton stated that the

installation of the concrete keyway was not called for or included as part of the original contract or contract price between Blanton and BCC Partners.  SUMF ¶ 20.

Mr. Rozier and Mr. Hauk stated that the foundation for the Original MSE Wall was composed of dirt and a rock footing that was six inches deep by eighteen inches wide, whereas the foundation for the Replacement MSE Wall was concrete.  SUMF ¶ 21.  Mr. Rozier and Mr. Schaller stated that the concrete keyway was not a component of the Replacement MSE Wall designed by Rosch Company LLC (hereinafter "Rosch") but was instead a separate item designed by a separate entity. SUMF ¶ 22.  Mr. Hauk and Mr. Lukas stated that the failure to discover unsuitable soils and to replace them with a deep, wide concrete keyway during the construction of the Original MSE Wall was a fault, inadequacy or defect in the initial planning, workmanship and construction of the Original MSE Wall.  SUMF ¶ 23.

Mr. Hauk, Mr. Lukas, and Mr. Rothe stated that the hillside behind the Original MSE Wall was constructed from dirt at the Project.  SUMF ¶ 24.  Mr. Hauk and Mr. Lukas stated that the hillside behind the Replacement MSE Wall was constructed from crushed gravel, rock and limestone fill material brought in from outside the Project.  SUMF ¶ 25.

Mr. Schaller and Mr. Hauk stated that the Replacement MSE Wall included an upgraded geogrid system that extended deeper into the hillside in comparison to the Original MSE Wall. SUMF ¶ 26.  Mr. Hauk and Mr. Lukas stated that the failure to include a more extensive geogrid was the result of a fault, inadequacy or defect in the initial planning, workmanship and construction of the Original MSE Wall and hillside.  SUMF ¶ 27.

Mr. Stone stated that Travelers hired expert engineers to visit the Project and provide information to be used in the determination of the cost to remove and replace the Original MSE Wall.  SUMF ¶ 30. Mr. Stone further stated that Travelers hired expert construction consultants to extensively review and analyze the pay applications submitted by Blanton and to determine an accurate cost to remove the Original MSE Wall and to construct the Replacement MSE Wall and

hillside. SUMF ¶ 31. Mr. Stone also stated that Travelers' general adjuster performed an extensive review with the assistance of multiple consultants of the pay applications and costs submitted by Blanton. SUMF ¶ 32.

Mr. Blanton stated that Travelers and its consultants conducted multiple inspections of the Project and attended multiple meetings with employees of Blanton, Blanton's retained consultants and representatives of the sub-contractors involved. SUMF ¶ 33. Mr. Blanton stated that Travelers timely paid Blanton a total of $1,317,080.00 in response to Blanton's claim under the Travelers Policy. SUMF ¶ 28.

Mr. Rozier stated that the Original MSE Wall along the north end of the Project was just one of seven retaining walls designed and built by Rosch, who agreed to design and build all seven of the retaining walls for a total subcontract price of $392,630.00. SUMF ¶ 35. Mr. Rothe stated that Budrovich's excavation and backfill of the hillside behind the Original MSE Wall was a small portion of Budrovich's work on the Project and cost between $200,000.00 to $300,000.00 of Budrovich's initial total subcontract price of $1,324,773.00. SUMF ¶ 36. Mr. Rozier and Mr. Rothe further stated that construction of the Original MSE Wall and hillside was nearly complete at the time of the incident on December 28, 2015. SUMF ¶ 37. Mr. Rozier stated that during the construction of the Replacement MSE Wall and hillside, Rosch and Blanton's representatives found unsuitable soils. SUMF ¶ 38.

Following the incident, Blanton submitted invoices to Travelers purportedly relating only to the Rosch and Budrovich costs associated with construction of the Replacement MSE Wall and hillside. These invoices totaled $2,629,868.00. SUMF ¶ 39. Rosch submitted invoices to Blanton totaling $892,453.00 for construction of the Replacement MSE Wall. SUMF ¶ 40. Budrovich submitted post-loss invoices to Blanton totaling $1,737,415.00 associated with removal of the Original MSE Wall and geogrid; removal and replacement of unsuitable soils and removal and replacement of the hillside. SUMF ¶ 42. Mr. Blanton stated that Travelers conducted a timely and

thorough investigation of Blanton's claim following the loss at issue.  SUMF ¶ 143.

Mr. Rothe stated that Budrovich removed the above grade materials in a way that nearly returned the Project to the original slope of the ground as it was prior to the construction of the Original MSE Wall.  SUMF ¶ 44.  Mr. Rothe also stated that Budrovich dug deeper during the construction of the Replacement MSE Wall and hillside to remove unsuitable soils.  SUMF ¶ 45.  Mr. Rothe further stated that apart from the removal of unsuitable soils below the original grade there was no reason for Budrovich to have dug deeper during construction of the Replacement MSE Wall and hillside.  SUMF ¶ 46.

As a result of removing unsuitable soils below the original grade of the Original MSE Wall and hillside, Budrovich incurred new and increased costs.  SUMF ¶ 47.  Mr. Rothe stated that after the failure but before construction of the Replacement MSE Wall and hillside Budrovich was not provided specifications as to the designated depth at which suitable soils could be found and to which Budrovich should dig. Therefore, the amount of unsuitable soils needing to be removed and replaced was unknown and Budrovich was unable to estimate the cost of the post-loss work or agree to perform said work on a non-hourly basis.  SUMF ¶ 48.

Mr. Rothe and Mr. Blanton stated that Budrovich maintained multiple forms of daily records for work performed at the Project and the records were the best source of identification and description of daily work performed by Budrovich.  SUMF ¶ 50.  Mr. Rothe stated that Budrovich's daily records confirm that Budrovich worked for six or seven months on removing unsuitable soils and digging to suitable soil beneath the original grade of the Original MSE Wall and hillside.  SUMF ¶ 51.

Blanton argues that the time period for the work attributable to the removal and replacement of unsuitable soils below the foundation of the Original MSE Wall and/or hillside was between June 29, 2016 through August 5, 2016.  *See* Plaintiff's Responses to SUMF ¶¶ 51-142.  However, Travelers argues that the time period for the work attributable to the removal and replacement of

unsuitable soils below the foundation of the Original MSE Wall and/or hillside was between May 10, 2016 through December 14, 2016.  *See* SUMF ¶¶ 51-142.  Both parties agree that costs associated with Budrovich's work in the amount of $194,288.00 is subject to the State Court Order.  *See* Plaintiff's Response to SUMF ¶ 144.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 157 and 1334 (2020).

## CONCLUSIONS OF LAW

Under Rule 56(c) of the Federal Rules of Civil Procedure as made applicable under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L. Ed. 2d 265 (1986).  The movant bears the initial burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 323.  Once the movant carries its burden, the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 323; *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).  In ruling on a motion for summary judgment, the court must view all the facts in the light most favorable to the nonmovant and that party must receive the benefit of all reasonable inference drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989) (citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224-25 (8th Cir. 1983)).

The Court must determine whether Blanton is entitled to additional costs under the Travelers Policy for costs associated with the removal and replacement of unsuitable soils below the Original

MSE Wall and hillside. The Court must also determine whether Travelers vexatiously refused to pay Blanton and is thus subject to penalties.

**I. Costs Associated with Removal and Replacement of Unsuitable Soils**

In determining the replacement and removal amount of unsuitable soils, this Court must first address what costs are associated with unsuitable soils.

Unambiguous court orders are given their plain meaning. *Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 967 (8th Cir. 2010) (citations omitted).  Interpreting a court's order is a question of law.  *Id*.  "The interpretation of the meaning of an insurance policy is a question of law." *Boulevard Inv. Co. v. Capitol Indem. Corp*., 27 S.W.3d 856, 858 (Mo. Ct. App. 2000) (quoting *Mut. Ins. Ass'n. of Ill. v. Shell Oil Co.*, 959 S.W.2d 864, 866 (Mo. Ct. App. 1997)). In Travelers' State Court Motion for Partial Summary Judgment, Travelers sought the reduction of the costs related with replacement and removal of unsuitable soils below the Original MSE Wall and hillside, installation of the concrete keyway and utilization of upgraded fill material and geogrid system.  The State Court Order granted Travelers' State Court Motion for Partial Summary Judgment in part "for reimbursement of the costs associated with the removal and replacement of unsuitable soils beneath the foundation of the original MSE [w]all and/or hillside after the incident" and denied the remaining requests.

In Travelers' Motion for Partial Summary Judgment before this Court, Travelers incorporates the concrete keyway, upgraded fill material, and geogrid system as "undisputedly relat[ing] to the 'removal and replacement of unsuitable soils beneath the foundation of the original MSE [w]all and/or hillside.'"  Travelers argues that the concrete keyway, upgraded fill material, and geogrid system are incidental to the Original MSE Wall and hillside and are thus covered under the State Court Order.  Travelers alleges that Rosch's construction of the concrete keyway was not used in the Original MSE Wall and was instead installed after discovery of unsuitable soils.  According to Travelers, the geogrid system was used and then replaced following discovery of unsuitable soils

-9-

causing new and increased costs. Travelers further alleges that the deep excavation of unsuitable soils below the foundation of the Original MSE Wall and hillside increased the material costs (*i.e.*, hauling the materials offsite, replacing unsuitable soils with other materials, building an access road for the removal process).

However, Travelers' State Court Motion for Partial Summary Judgment was granted only as to removal and replacement of unsuitable soils beneath the foundation of the Original MSE Wall and hillside. The State Court Order is unambiguous: the costs to remove and replace unsuitable soils beneath the Original MSE Wall and hillside are not covered under the Travelers Policy. The question of the costs associated with the installation of the concrete keyway, utilization of upgraded fill material, and geogrid system were denied. Therefore, pursuant to the State Court Order, the Court finds that the additional costs associated with the removal and replacement of unsuitable soils are not covered under the Travelers Policy.

Determining the amount owed on an insurance policy is a question of fact. *See IPSCO Tubulars, Inc. v. Ajax TOCCO Magnathermic Corp.*, 779 F.3d 744, 751 (8th Cir. 2015) (Consequential damages in a breach of contract action are a question of fact); *Peitzman v. Illmo*, 141 F.2d 956, 963 (8th Cir. 1944) ("The amount of damages was a question of fact for the jury"). Here, the reimbursement amount is in dispute. Travelers argue that at least $971,600.77 fall within the State Court Order. Blanton concedes that it paid Budrovich $194,288.00 to remove unsuitable soils beneath the Original MSE Wall however disputes every other claim. The timeframe of the removal and replacement of unsuitable soils is also in dispute. To determine the removal and replacement costs, the timeframe of the work done to remove unsuitable soils must be ascertained. Here, Travelers argue the timeframe ran from May of 2016 until December of 2016. However, Blanton argues that the timeframe is much shorter – from June 2016 until August 2016. Therefore, the Court concludes that there is a dispute as to the costs for removal of unsuitable soils.

**II. Vexatious Refusal Claim and Penalties**

Under RSMo § 375.420, Blanton must prove Travelers' refusal to pay was willful and without reasonable cause. *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984). An insurer's ultimate liability under the policy is not determinative of whether the refusal was vexatious. *JAM Inc.*, 128 S.W.3d at 897. Rather, this determination must be based on the facts present at the time the insurer was called upon to pay. *DeWitt*, 667 S.W.2d at 710; *JAM Inc.*, 128 S.W.3d at 897. Although the question of reasonableness is generally a question of fact to be decided by a jury, the reasonableness question can be determined by the court as a matter of law based upon undisputed facts. *Watters*, 136 S.W.3d at 109. Here, the reimbursement amount still remains at issue. Thus, the vexatious refusal claim is not ripe for adjudication pending resolution of the reimbursement amount issue.

In viewing the facts in the light most favorable to Blanton, this Court finds there are genuine issues of material fact regarding the costs for removal and replacement of unsuitable soils from the Original MSE Wall and hillside. The Court also finds that the vexatious refusal claim is not ripe for adjudication. Thus, Travelers is not entitled to judgment as a matter of law. Therefore,

**IT IS ORDERED THAT** Defendant's Motion for Partial Summary Judgment filed by Travelers is **DENIED** in that only the costs for removal and replacement of unsuitable soils are not covered under the Travelers Policy and in that the vexatious refusal claim is not ripe for adjudication.

_Kathy A. Surratt-States_
KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: July 28, 2022
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Ben F Blanton Construction Inc
550 Turner Blvd
St Peters, MO 63376

Wendi S. Alper-Pressman
Lathrop GPM LLP
7701 Forsyth Blvd., suite 500
St. Louis, MO 63105

Robert L. Brady
Brown & James, PC
800 Market Street
Suite 1100
St. Louis, MO 63101

Travelers Property Casualty Company of America
Director of Insurance
301 W High St Rm 530
Jefferson City, MO 65101

Lucas Ude
Scott Maschmann
800 Market Street
Suite 1100
St. Louis, MO 63101

Randall F. Scherck
Greensfelder, Hemker, & Gale, P.C.
10 South Broadway
Ste 2000
St. Louis, MO 63102

Rosch Company, LLC
RGA Scott Rozier
406 E Wabash
O'Fallon, MO 63366

Budrovich Excavating Inc
RGA Daniel S Peters
1851 Winegard Dr
Ballwin, MO 63021